**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WYNN MA, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-cv-10067 |
| THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 25; and UNITE HERE!, LOCAL 26 | |
| Defendants. | |

## COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff Wynn MA, LLC, doing business as Encore Boston Harbor ("Encore"), brings this action to vacate an arbitration award pursuant to a collective bargaining agreement ("Agreement") with Defendants International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Local 25 ("Local 25") and UNITE HERE!, Local 26 ("Local 26") (collectively, the "Union"). Encore terminated employee Charles Truong ("Truong") after he used a racist slur in the workplace when he called a Black coworker[1] a "monkey." Specifically, in connection with an informal bet among the employees, Truong said to the co-workers and in front of others that "the monkey better pay." When placed on suspension pending investigation for the racial slur, Truong tried to hand bananas to the same Black employee who he had called a monkey.

The Union grieved Truong's termination and took that grievance to arbitration, pursuant to the grievance and arbitration provisions of the parties' Agreement. The Arbitrator concluded that based on the record evidence, Truong used the racial slur and this was "unwelcome verbal

---

[1] Please note that the victim is not referred to by name herein and his name has been redacted in the attached exhibits out of consideration for his privacy and in light of the fact that his identity is not relevant to this Complaint.

conduct based upon a protected characteristic."  Although Encore and the Union expressly

agreed in their Agreement that such conduct in the workplace "will not be tolerated" and "will be

subject to discipline including immediate discharge," the Arbitrator characterized Truong's use

of a racial slur as "highly inappropriate teasing but not taunting" and explained that

"[d]iscriminatory associations and stereotypes are unfortunately common in our society and can

therefore surface without meanspirited intent."  The Arbitrator apparently believed that Truong

was "trying to be funny" by calling a Black coworker a monkey.  As to the banana incident, the

Arbitrator characterized it as "unremarkable."  Accordingly, the Arbitrator reduced the

termination to a written warning and ordered Encore to reinstate Truong with backpay.

       This Award cannot stand.  The Arbitrator's apparent belief that an employee who calls a

Black coworker a monkey should get his job back (with backpay), so long as he claims it was a

joke, violates the established and dominant public policy against race-based harassment in the

workplace and an employer's obligation under federal and state law to redress such conduct in

the workplace.  Title VII of the Civil Rights Act of 1966 and Massachusetts General Laws ch.

151B provide that employees are entitled to a work environment free of race-based harassment,

and that an employer has an obligation to investigate and to promptly and effectively remediate

race-based harassment in the workplace.  This Encore did, by removing Truong from working

alongside the coworker to whom he had made unwelcome racist comment.  By ordering his

reinstatement, the Award violates public policy, as set forth by state and federal anti-

discrimination law and would force Encore to require the Black coworker who Truong referred

to as a "monkey," as well as those coworkers who heard the racial slur and were also upset by it,

to continue to work alongside Truong.

Further, the Award does not draw its essence from the parties' collective bargaining agreement. In Article 28 of that Agreement, the parties agreed that there is zero tolerance for harassment and that employees who "engag[e] in such conduct will be subject to discipline including immediate discharge." The Arbitrator failed to apply this unambiguous language of Article 28, As such, the award should be vacated.

## JURISDICTION AND VENUE

1.      This complaint is brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate the Arbitrator's Award and Opinion dated December 11, 2023, a true and accurate copy of which is attached as Exhibit 1.

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 185.

3.      Venue is proper under 29 U.S.C. § 185 and 28 U.S.C. § 1391.

## PARTIES

4.      Encore is a luxury resort and casino located in Everett, Massachusetts.

5.      Local 25 is an unincorporated association and a "labor organization" as defined by 29 U.S.C. § 152(5).

6.      Local 25 is headquartered at 544 Main Street, Charlestown, MA 02129.

7.      Local 26 is an unincorporated association and a "labor organization" as defined by 29 U.S.C. § 152(5).

8.      Local 26 is headquartered at 101 Station Landing, 4th Floor Medford, MA 02155.

9.      Since April 19, 2021, Local 25 and Local 26 together have been the exclusive bargaining representative of certain employees at Encore.

## FACTS

**I.     THE COLLECTIVE BARGAINING AGREEMENT AND ENCORE POLICIES**

10.     Encore and the Union were parties to the Agreement from April 19, 2021 through April 18, 2023.  A true and accurate copy of the Agreement is attached as Exhibit 2.

11.     Pursuant to the Agreement, "Local 26 shall at all times serve as the chief negotiator of the collective bargaining agreement and the administrator of the grievance and arbitration process."

12.     Article 17, entitled "Discipline and Discharge," states that "[e]mployees may be discharged, suspended, or disciplined by the Employer for just cause" and "[t]he parties agree that the policy of progressive discipline shall be used in all cases where warranted but egregious matters may result in . . . termination with no prior discipline."

13.     Article 19, entitled "Rules and Postings," of the Agreement reserves to Encore the right "to establish and administer reasonable rules, regulations and procedures governing the conduct of employees upon notification to the Union, provided that such rules, regulations and procedures are not inconsistent with any provisions of this Agreement."

14.     Article 27, entitled "No Discrimination," provides that Encore and the Union "agree that there shall be no discrimination as to wages, hours or working conditions against any employee on account of race, color, creed, national origin, disability, religion, veteran status, sex, sexual orientation, union status or activity, age or any protected status as proved by law."

15.     Article 28, entitled "Sexual / Harassment and Workplace Violence," provides that Encore and the Union agree that "[h]arrasment . . . will not be tolerated."  Because such conduct was intolerable, Encore and the Union also agreed that "[i]ndividuals engaging in such conduct will be subject to discipline including immediate discharge."

4

16.     Article 28 further provides: "Harassment for the purposes of this article includes, but is not limited to, abusive or threatening language, conduct creating a hostile work environment, workplace violence and sexual harassment."

17.     Consistent with Article 19, Encore promulgated the "Preventing Harassment and Discrimination Policy," applicable to all employees, a true and accurate copy of which is attached hereto as Exhibit 3, which in relevant part defines prohibited harassment as including: "unwelcome conduct, as determined by the recipient of the harassing behavior, whether verbal, physical or visual, that is based upon a person's Protected Characteristic."

18.     The Preventing Harassment and Discrimination Policy includes as an example of conduct deemed inappropriate under the policy "tell[ing] jokes . . . insulting or derogatory to an individual's Protected Characteristic."

19.     The Preventing Harassment and Discrimination Policy also provides that:

Any supervisor or above who becomes aware of possibly discriminatory, harassing or retaliatory behavior **must immediately** report the situation to the Employee Relations Department, Legal Department, or Compliance, whether or not an employee has actually complained to the supervisor.

\*\*\*

Harassment and discrimination claims will be fully investigated by the Employee Relations Department, the Legal Department, or our outside counsel.

20.     Consistent with Article 19, Encore promulgated the "Code of Business Conduct and Ethics," a true and accurate copy of which is attached hereto as Exhibit 4, which provides:

The Company does not tolerate offensive, demeaning, insulting or otherwise derogatory conduct, and is committed to a workplace that is free from sexual harassment and harassment based on other legally protected characteristics, or any other basis protected by federal, state or local law or ordinance or regulation.

21.     With respect to the prohibition against Harassment and Discrimination, the Code of Business Conduct and Ethics further provides: "Employees who violate this policy will be

subject to disciplinary action, up to and including termination of employment.  Disciplinary

action can be taken in cases of inappropriate conduct, even if that conduct does not amount to a

violation of the law."

22.     Consistent with Article 19, Encore also promulgated the "Personal Conduct

Policy," applicable to all employees, a true and accurate copy of which is attached hereto as

Exhibit 5, which provides: "personal conduct standards are based on the philosophy that people

should be treated with dignity and respect."  The Personal Conduct Plicy includes examples of

expected conduct, including: (a) "Creating a positive work environment by respecting, helping,

and encouraging coworkers;" and (b) "Refraining from inappropriate conduct," with a reference

to the Preventing Harassment and Discrimination Policy setting forth additional detail with

respect to appropriate workplace behavior.

23.     Encore requires employees to attend, and Truong did attend, the "Preventing

Harassment and Discrimination" employee training.  The training, a true and accurate copy of

which is attached hereto as Exhibit 6, sets forth Encore's prohibition against discrimination,

harassment, and retaliation and trains employees on "[h]ow to avoid these behaviors and foster a

culture of respect and dignity."  The training specifically explains that referring to a Black

individual as a monkey is an example of racism.  *See id*. at p. 8.

24.     The Agreement, at Article 20, contains a grievance and arbitration provision.  The

final step of the grievance process is arbitration before a neutral arbitrator of the Labor Relations

Connection.

25.     The Agreement specifies that only Local 26 (as opposed to Local 25) can take a

grievance to arbitration.

6

**II.    TRUONG'S REFERS TO A COWORKER AS A "MONKEY"**

26.    Truong was employed by Encore as a Room Reservation Agent in the Call Center.

27.    Truong and another employee, who is Black, often made informal bets regarding which of them would book more rooms in a month.  In connection with one of these bets, on February 18, 2023, while at his workstation, Truong said, in direct reference to and in the presence of this Black coworker: "The monkey better pay."

28.    Truong's statement was heard by at least two other Encore employees, including Charlene DiGaetano ("DiGaetano"), Truong's direct supervisor.  And, as the Arbitrator found, "[b]ecause [Truong's coworker] is black, [the] comment was unquestionably read as a racist remark to some of those that overheard it."  Quoting from the testimony of the victim, the Arbitrator wrote, "when the 'monkey' comment was made 'the room went quiet' and [the Black employee] just picked up his next call" and that his "reaction was professional in the workplace but if he had not been on the job he might have reacted in a different way."

29.    Truong's Black coworker had scheduled days off on February 19 and 20, 2023.

30.    On February 21, 2023, DiGaetano approached Truong about his having referred to his Black coworker as a "monkey."  She told him that referring to his coworker as a monkey was a bad term and he should know better.  At the direction of her supervisor, Yelena Gorbovets, DiGaetano placed a note in Truong's personnel file documenting this conversation.  *See* Note to File, a true and accurate copy of which is attached hereto as Exhibit 7.

31.    On February 21, 2023, Charlene DiGaetano also spoke with the victim who confirmed that he heard Truong refer to him as a "monkey."

32.     At the hearing, Truong claimed that he had apologized to the victim for the comment but the coworker denied that any such apology had occurred.  Without resolving this factual dispute, the Arbitrator explained that Truong's purported statement "that he had not meant to say anything offensive and that he is not a racist" was not an apology and the victim would not have reasonably taken it as such.

33.     On February 22, 2023, Encore placed Truong on a Suspension Pending Investigation.  *See* Suspension Pending Investigation, a true and accurate copy of which is attached hereto as <u>Exhibit 8</u>.

34.     On February 22, 2023, after Truong was informed he was placed on a Suspension Pending Investigation, Truong offered his Black coworker a bunch of bananas that had been stored in Truong's desk drawer.  Surveillance video, presented at the arbitration hearing, showed that Truong offered the bananas exclusively to his Black coworker, although others were present, and threw the bananas away when his Black coworker declined.  *See* Still Photographs of the Surveillance Video, a true and accurate copy of which are attached hereto as Exhibit 16.

35.     On February 22, 2023, Encore initiated an investigation conducted by Employee Relation employee Charlotte Valentin Rivera.

36.     During the investigation, Encore gathered witness statements, including from Truong, a true and accurate copy of which is attached hereto as <u>Exhibit 9</u>; Maria Portillo, a true and accurate copy of which is attached hereto as <u>Exhibit 10</u>; Truong's Black coworker, a true and accurate copy of which is attached hereto as <u>Exhibit 11</u>; and Charlene DiGaetano, a true and accurate copy of which is attached hereto as <u>Exhibit 12</u>.

37.     After the investigation, Encore reduced to writing the conclusion of the investigation and basis for the Employee Relations Department's recommendation that Truong

8

be terminated.  *See* Encore Termination Reasons, a true and accurate copy of which is attached hereto as Exhibit 13.

38.     Truong was terminated on March 17, 2023.

39.     Encore Employee Relations prepared "synopsis notes" after the investigation, which provides:

> Employee Relations conducted an investigation that substantiated the allegation. Charged Party admitted to using the word "monkey" during the conversation and gave non-credible denials about what he meant by the term.  Witnesses corroborated the substance and context of the conversation.  After being put on Suspension Pending investigation Charged Party gave a banana to Affected Person.  Charged Party was terminated for violating the Preventing Discrimination and Harassment Policy.

*See* Encore Relations Case Summary, a true and accurate copy of which is attached hereto as Exhibit 14.

## III.     ARBITRATION AND AWARD

40.     The Union grieved Truong's termination and ultimately took the grievance to arbitration before an arbitrator.

41.     A hearing was held before the Arbitrator on September 7 and October 4, 2023. Twenty-three exhibits were introduced into evidence at the hearing, including Exhibits 2 through 14, attached hereto, and the Arbitrator viewed the surveillance video of Truong offering his Black coworker bananas.

42.     On December 11, 2023, the Arbitrator issued the Award.  *See* Exhibit 1.

43.     Although Truong tried to claim that he was unaware that calling a Black person a "monkey" was a racist slur and that, in his Vietnamese culture, "monkey" was a term of affection and associated with the year of the monkey on the Chinese Zodiac, the Arbitrator rejected those explanations.  The Arbitrator concluded that Truong's use of the word "monkey" was a "racial

9

slur" and constituted "unwelcome verbal conduct based upon [the coworker's] protected characteristic."  The Arbitrator further found that the comment was "unquestionably read as a racist remark to some of those who overheard it."

44.     However, the Arbitrator wrote that "[t]here is no way that an arbitrator, or anyone else, can know with precision why the grievant said what he said," but she believed that Truong "was seemingly trying to be funny" and characterized the racial slur "as highly inappropriate teasing but not taunting."  The Arbitrator also wrote, "[d]iscriminatory associations and stereotypes are unfortunately common in our society and can therefore surface without meanspirited intent."  Apparently because she viewed Truong's calling a Black man a monkey was a joke, she concluded that it was not egregious and believed that termination was too harsh.

45.     As to the incident in which Truong tried to hand bananas to the victim, as he was suspended for calling that individual a monkey, the Arbitrator characterized it as "unremarkable" and held that this did not constitute harassment.

46.     Although Encore specifically argued to the Arbitrator that the plain language of Article 28 permitted it to terminate Truong for his misconduct, *see* Encore Boston Harbor's Post-Hearing Brief, a true and accurate copy of which is attached hereto as Exhibit 15, the Arbitrator disregarded that language and claimed that only "egregious" incidents warranted termination.

47.     The Arbitrator reduced the termination to a written warning and ordered Encore to reinstate him to his former position with backpay.

## **GROUNDS TO VACATE THE AWARD**

48.     Paragraphs 1 through 47 are incorporated by reference as if fully set forth herein.

49.     The Award is contrary to the dominant and well-established public policy against race-based harassment in the workplace and an employer's obligation under federal and state law to remedy discrimination and harassment.

50.     The Award does not draw its essence from the Agreement. The reduction of the termination to a written warning is not consistent with the Agreement.

51.     In issuing the Award, the Arbitrator exceeded her authority and dispensed her own brand of industrial justice.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Encore prays for relief against the Union as follows:

1. An order vacating the Arbitrator's decision; and

2. Any further relief as the Court deems just and proper.


DATED: January 9, 2024                         Respectfully submitted,

                                               WYNN MA, LLC

                                               By Its Attorneys,


                                               */s/ Robert A. Fisher*
                                               Robert A. Fisher (BBO #643797)
                                               rfisher@seyfarth.com
                                               Sarah B. Affel (BBO #672651)
                                               saffel@seyfarth.com
                                               SEYFARTH SHAW LLP
                                               Seaport East
                                               Two Seaport Lane, Suite 1200
                                               Boston, Massachusetts  02210-2028
                                               Telephone:    (617) 946-4800
                                               Facsimile:    (617) 946-4801

307323533v.1