**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| WYNN MA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. 1:24-cv-10067-WGY |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS, LOCAL 25, and | ) | |
| UNITE HERE!, LOCAL 26, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT UNITE HERE!, LOCAL 26'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND IN
OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.   INTRODUCTION

Now comes Defendant UNITE HERE!, Local 26 ("Local 26"), by its attorneys, which respectfully moves this Honorable Court confirm the Arbitration Award ("Award") and grant judgment in its favor pursuant to Fed.R.Civ.P. 12(c). As grounds therefore, Local 26 asserts that there is no cognizable bases for vacatur of the Award between the parties as Wynn MA, LLC, doing business as Encore Boston Harbor ("Plaintiff" or "Company") has alleged. Further, as this Court recently rejected the exact same arguments the Plaintiff makes here, the Court should also grant attorney fees, costs, and expenses to Local 26 in order to deter the Plaintiff from continuing to waste the Court's time and energy on frivolous lawsuits designed to inflict further harm on the unions and their members in total disregard for its negotiated agreement to participate in final and binding arbitration.

## II.      RELEVANT BACKGROUND

### A.      Procedural History

The Company, Local 26, and Defendant International Brotherhood of Teamsters, Local 25 ("Local 25"), are parties to a collective bargaining agreement ("CBA"), attached hereto as Exhibit A. Article 20 sets forth the parties' negotiated grievance/arbitration procedure, which provides that "[a]ny differences, disputes or grievances relating to the interpretation of this Agreement which arise during the term of the Agreement shall be disposed of as provided by this grievant and arbitration procedure." *Id.* at 16. If the grievance remains unresolved after exhaustion of the internal grievance process, it may be submitted to arbitration. *Id.* at 16-17.

On February 22, 2023, the Company terminated bargaining unit member and employee Charles Truong ("Grievant"). *See* Exhibit B. On September 7 and October 4, 2023, Local 25 and the Company appeared for an arbitration proceeding before neutral Arbitrator Sarah Kerr Garraty. *Id.* At the outset of the arbitration hearing, the parties stipulated to the following issues:

> Did the Employer have just cause to terminate the employment of the Grievant, Charles Truong, on February 22, 2023? If not, what shall be the remedy?

*Id.* at 2. Both parties had a full opportunity to present witnesses and other evidence, and both parties submitted post-hearing briefs in support of their respective positions. *Id.*

On December 11, 2023, Arbitrator Garraty issued an Award sustaining the grievance and ordering the Company to reinstate the Grievant, make the Grievant whole for all lost wages form the date his termination to the date of compliance with the Award, and to reduce the discipline to a written warning. Exhibit B at 1, 16.

**B.**      **The Arbitrator's Findings of Fact**[1]

On February 21, 2023, the Company suspended bargaining unit member Charles Truong ("Grievant") pending investigation after it learned that, during some competitive banter with a black coworker regarding a "friendly bet," the Grievant said, "the monkey better pay." Exhibit B at 4. Prior to this incident, the Grievant and the coworker were on friendly terms and often made "friendly bets" with each other. *Id.* at 3-4. The Grievant testified that in his culture, calling someone a monkey is a term of affection often associated with the year of the monkey on the Vietnamese zodiac calendar, and that he was unaware that referring to a black person as a monkey had racist connotations. *Id.*

After being notified of his suspension, the Grievant returned to his work area and started cleaning out his desk. *Id.* at 6. The Grievant had bananas from the cafeteria in his desk drawer and asked the same coworker if he wanted them before the Grievant threw them away. *Id.* At hearing, the Grievant testified he offered them to the coworker because he did not want the bananas to rot in his drawer and the coworker is a "big snacker." *Id.* On February 22, 2023, the Company terminated the Grievant. *Id.* at 8.

**C.**      **The Arbitrator's Decision**

Article 17 of the parties' CBA provides that "[e]mployees may be discharged, suspended, or disciplined by the Employer for just cause." [Ex. A at 14.] Article 17 further provides that "the policy of progressive discipline shall be used in all cases where warranted but egregious matters may result in suspension pending investigation (SPI) or termination with no prior discipline." [Id.]  The parties stipulated at arbitration that the dispute was whether the Company had just

---

[1] For the purposes of a proceeding to vacate or enforce an arbitrator's award, the factual findings of the arbitrator are binding on all parties and on the Court. *El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores*, 961 F. 2s 317, 320 (1st Cir. 1992) ("… as a general proposition, an arbitrator's factual findings are not open to judicial challenge.").

cause to terminate the Grievant. Exhibit A at 14; Exhibit B at 2. Based on the factual findings summarized above and detailed in her decision, the Arbitrator concluded that the Company violated Article 17 as alleged. Exhibit B at 16.

The Arbitrator correctly set forth the Company's burden to prove that the Grievant's conduct was sufficiently egregious to warrant immediate termination in lieu of progressive discipline. *Id.* at 12.  The Arbitrator concluded that the Company failed to meet this burden. Specifically, the Arbitrator found that the evidence adduced at hearing demonstrated that the Grievant and the coworker were friendly colleagues for over a year and there was no evidence that the grievant had previously displayed any sign of racism toward this coworker or any other coworker. *Id.* at 13. The Arbitrator noted that there was no dispute that the Grievant and the coworker often made friendly competitive wagers about who would be the top salesperson each month and, between calls, engaged in regular banter about their competition. *Id.* at 13. Based on these findings – coupled with the Grievant's long-term service and clean disciplinary record – the Arbitrator concluded that while the Grievant's conduct was inappropriate and unwelcome, it was not so egregious as to warrant his immediate termination. *Id.* at 13.

The Company defended the termination by arguing that its policy against harassment and discrimination mandates discipline for employees who violate the policy, and the Grievant's conduct constituted harassment as defined in Article 28 of the parties' CBA, which all permits "discharge including immediate discharge." *Id.* at 4, 12. The Arbitrator's analysis reflects her careful consideration of the Company's position:

> The provision that Encore has most heavily relied on as amounting to a zero-tolerance policy is not a mandatory termination policy. The Agreement and policy required it to take its ethical standards very seriously and to impose an appropriate level of discipline. The employer adhered to its zero-tolerance policy because it did not tolerate what the grievant said. It imposed discipline as its policy commands.

4

But the grievant's long-term excellent service when Encore first opened, his previously clean disciplinary record, the lack of evidence that he had ever displayed any evidence of racism, and the context in which this racist slur surfaced, entitled him to an opportunity to learn from this single mistake. Should he fail [to] remain professional and kind in the workplace or continue [to] make jokes that are not jokes, more serious discipline will appropriately follow.

*Id.* at 15. In other words, the Arbitrator *agreed* with the Company that it had an obligation to take this matter seriously and sufficient cause to impose discipline. She simply concluded that termination was too severe a penalty in this specific scenario. She therefore ordered the Company to reinstate the Grievant and to reduce the termination to a Level 2 written warning. *Id.*

## III.   ARGUMENT

### A.   The Standard of Review of An Arbitration Award is Extremely Deferential

The scope of a judicial review arbitration awards is very narrow and deferential. As the Supreme Court articulated in the landmark *Steelworkers Trilogy*:

The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the award.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the Arbitrator. . . .  In these circumstances the moving party should not be deprived of the Arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

*United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568 (1960).

[T]he question of interpretation of the collective bargaining agreement is a question for the Arbitrator.  It is the Arbitrator's construction which was bargained for; and so far as the Arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel & Car*, 363 U.S. at 599.

These principles of narrow judicial review of labor arbitration awards have remained immutable since the Court spoke in the Trilogy more than sixty years ago. *See United Steelworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 30 (1987) ("[I]t is the Arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an Arbitrator as an appellate court does in review of decisions of lower courts . . . . [A]s long as an Arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *see also W.R. Grace & Co. v. Rubber Workers Local 759*, 461 U.S. 757, 764 (1983); *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 411 (1976).

The First Circuit has adhered consistently to these narrow standards.  In *Larocque v. R.W.F. Inc.*, 8 F.3d 95, 96 (1st Cir. 1993), the Court emphasized the generous and deferential standard of review when it stated:

> A court should uphold an award that depends on an Arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, ***any plausible basis for that interpretation***.

8 F.3d at 96 (emphasis in original), quoting from *El Dorado Technical Servs., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1st Cir. 1992). Challenges to an arbitrator's award are "a steep uphill climb" that "(t)ypically [ ] will fail if the award 'draws its essence from the collective bargaining agreement" rather than from the arbitrator's "own brand of industrial justice."  *Mercy Hospital, Inc. v. Massachusetts Nurses Assn.*, 429 F.3d 338, 343 (1st Cir. 2005), quoting *Enterprise*, 363 U.S. at 397. See also, *Cytyc Corp. v. Deka Prods. Ltd. Partnership*, 439 F. 3d 27 (1st Cir. 2006)*; Keebler Co, v. Truck Drivers, Local 170*, 247 F.3d 8, 10 (1st Cir. 2001); *Service Employees Int'l Union v. Local 1199 N.E., SEIU*, 70 F.3d 647, 651 (1st

Cir.1995); *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d

425, 428 (1st Cir.1989) ("Judicial review of an arbitration award is among the narrowest known

in the law."). The Court in *El Dorado* also added:

> In labor arbitration, matters of contract interpretation are typically for the arbitrator, not
> for a review court. While the arbitrator's award must draw its essence from the collective
> bargaining agreement, it need not mirror a judge's notion of how the agreement's
> language might be best interpreted or might most fairly be applied given a set of facts. So
> long as the arbitrator, acting without the scope of his delegated authority, is arguably
> construing the contract, his decision must stand.

961 F.2d at 319.  See also *Berklee College of Music v. Massachusetts Federation of Teachers*

*Local 4412*, 858 F.2d 31, 32-33 (1st Cir. 1988), cert. denied, 110 S.Ct. 53 (1989); *Crafts*

*Precision Industries Inc. v. Lodge No. 1836, I.A.M.* ("*Crafts Precision*"), 889 F.2d 1184, 1185

(1st Cir. 1989); *Local 1445, United Food and Commercial Workers International Union, AFL-*

*CIO v. The Stop & Shop Companies*, 776 F.2d 19 (1st Cir. 1985); *Bettencourt v. Boston Edison*

*Co.*, 560 F. 2d 1045 (1st Cir. 1977); *Local Union No. 251 v. Narragansett Improvement Co*, 503

F.2d 309 (1st Cir. 1974). When the arbitration concerns the interpretation of a collective

bargaining agreement, a court must refuse to set aside an arbitrator's decision "unless it can be

shown that the arbitrator acted in a way for which neither party could [possibly] have bargained."

*Local 1445, United Food & Commercial Workers Int'l Union,* 776 F.2d at 21 (citing *Enterprise*

*Wheel*, 363 U.S. at 599).

This long-held and extremely narrow standard of review makes arbitration awards

"nearly impervious to judicial oversight." *Teamsters Loc. Union No. 42 v. Supervalu, Inc.*, 212

F.3d 59, 61 (1st Cir. 2000). An arbitrator's decision may be reviewed on the merits only if the

party seeking such review shows, at a minimum, "that the award is 'unfounded in reason and

fact' [citation omitted], is based on reasoning 'so palpably faulty that no judge, or group of

judges, could ever conceivably have made such a ruling' [citation omitted], or is mistakenly

based on a crucial assumption which is 'concededly a non-fact '(quoting *Safeway Stores v.*
*American Bakery and Confectionery Workers,* 390 F.2d 79, 82 (5th Cir.  1968)."  *Bettencourt*,
560 F.2d at 1050.

    **B.**    **The Arbitrator's Award Draws Its Essence from the Collective Bargaining
Agreement**

        The Company first argues that the Arbitrator's Award does not draw its essence from the
parties' collective bargaining agreement. The Company claims that the Arbitrator "relied on
Article 17 for the proposition that only 'egregious' conduct may warrant immediate termination,
but in doing so, ignored Articles 27 and 28, in which the parties agreed to a different standard
involving harassment and discrimination in the workplace." [EFC No. 25 at 10.]  The Company's
claim that the Award "manifest[s] a disregard" of the CBA cannot be sustained when the parties
asked the Arbitrator to evaluate the evidence and decide the issue of just cause. Those are the
only factual and legal determinations she made.

        The question the parties jointly agreed to submit to the Arbitrator was whether the
Company had "just cause" to terminate the grievant, a standard expressly derived from Article
17, which provides:

> Employees may be discharged, suspended, or disciplined by the Employer for **just cause**.
> The parties agree that the policy of progressive discipline shall be used in all cases where
> warranted but egregious matters may result in suspension pending investigation … or
> termination with prior discipline.

Exhibit A at 14 (emphasis added). Having agreed to this framing of the issue, the Company
cannot plausibly be heard to complain that Award did not draw its essence from the contract
simply because she answered this question in the Union's favor. To so would "fl[y] in the face of
the joint arbitral submission." *Larocque*, 8 F. 3d at 97.

In any event, the Company's argument that the Arbitrator's decision ignores that the parties "bargained for and agreed that offenses relating to discrimination and sexual harassment would not be subject to progressive discipline," [ECF No. 25 at 11], is patently incorrect. In fact, the Company made this **exact** argument in a recent case between these parties in which an arbitrator reduced the Company's decision to terminate an employee for alleged sexual harassment. The District Court rejected the Company's claim, aptly stating:

> First, the CBA is ambiguous as to the relations between Articles 17 and 28, and whether sexual harassment is per se just cause for termination under Article 17, Article 28 notwithstanding. The fact that sexual harassment is not specifically listed as just cause under Article 17 makes this case different from *Poland Spring Corp. v. United Food & Com. Workers Intl'l Union*, 864 F.3d 29 (1st Cir. 2002) and *Georgia-Pacific Corp. v. Loc. 27, United Paperworkers Int'l Union*, 864 F. 2d 940 (1st Cir. 1988), which Wynn cites in support of its position that the Arbitrator misinterpreted the CBA … Given the ambiguity in the present case, it fell to the arbitrator to decide whether Article 28 was the exclusive provision with respect to discipline for sexual harassment, or whether discipline for sexual harassment should also be assessed using the just cause standard of Article 17.
>
> Second, in part given the ambiguity in the CBA, the Arbitrator was within his discretion to interpret the dispute as having "been submitted under the just cause standard," which gives Encore the burden of demonstrating that [the Grievant] engaged in conduct warranting discipline up to and including his discharge.
>
> As a result, the Court will not vacate the Arbitrator Award as it "dr[ew] its essence form the" CBA, applied the specific facts of the case, and was supported by reasoning that was not "so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling…." *See Supervalu*, 212 F.3d at 65-66.

*Wynn MA, LLC v. Unite Here!, Local 26*, C.A. No. 23-cv-11223-ADB at 15 (D. Mass. June 12, 2024) (internal citations and quotations omitted) (attached hereto as Exhibit C).

Just as in the prior case, the Arbitrator here squarely addressed the parties' agreed-upon issue of whether the Company had just cause to terminate the Grievant. As explained above, the Arbitrator carefully considered the "interrelated articles of the CBA and company policy" and concluded that while the Company had an obligation to take this matter seriously and sufficient cause for disciplinary action, neither the CBA nor the Company's anti-harassment policy

mandated termination. Accordingly, the Arbitrator acted within her discretion and the Court may

not vacate the Award as it drew its essence from the CBA, applied the specific facts of the case,

and was supported by sufficient reasoning.

     **C.**     **The Arbitrator's Award Does Not Violate Public Policy**

     The Company also argues that the Award should be vacated "because it violates the

dominant and well-defined public policy against discrimination in the workplace," by

"condoning discrimination and harassment in the workplace [,] … inhibit[ing] Encore form

taking reasonable steps to prevent and correct harassment in the workplace going forward [,]"

and forcing the Company to "reinstate[] … an employee who directed a racial slur at his

coworker." [ECF 10, 15-20.] The Company's argument in this regard is essentially identical to

that recently made before – and rejected by – the District Court. [Exhibit C at 16-19].

     While Courts have recognized that there is a public policy against harassment, this policy

does not require automatic termination for every employee who commits harassment. As stated

by the Fourth Circuit stated in a case involving sexual harassment:

> There is no public policy that every harasser must be fired … nowhere in this litany of
> prevention and correction is there the suggestion that every employee who makes a
> mistake must automatically lose his or her job. And because misconduct often differs in
> degree, there is no universal punishment that fits every case. We therefore agree with
> those circuits that have concluded the general public policy against sexual harassment is
> not sufficient to supplant labor arbitration of employee disciplinary sanctions.

*Westvaco Corp. v. United Paperworkers Intern. Union, AFL-CIO ex rel. Local Union 676*, 171

F.3d 971, 977 (4th Cir. 1999) (affirming arbitrator's award reinstating grievant found to have

sexually harassed a coworker because he was not previously warned and pledged to correct his

behavior) (internal citations omitted). See also, *Way Bakery v. Truck Drivers Local No. 164*, 363

F.3d 590, 595 (6th Cir. 2004) (affirming arbitrator's award reinstating white grievant who made a

racially insensitive remark to a black coworker); *Chrysler Motors Corp. v. Int'l Union, Allied*

*Indus. Workers, etc.*, 959 F.2d 685, 689 (7th Cir. 1992) (affirming arbitrator's award reinstating grievant who sexually assaulted a coworker because of lack of prior discipline and belief that the grievant could be rehabilitated); *Commc'n Workers of Am. v. Se. Elec. Coop.*, 882 F.2d 467, 469-70 (10th Cir. 1989) (affirming an arbitrator's award reinstating a grievant accused of sexual assault based upon arbitrator's determination that "a one-time offense" accompanied by a "penitent and apologetic attitude" should result in a lesser penalty).

In asserting that public policy prohibits reinstatement, the Company commits the same mistake as the employers in the above-cited decisions, where the Fourth, Sixth, Seventh and Tenth Circuits affirmed that they must defer to the arbitrator. *Westvaco*, 171 F.3d at 975; *Commc'n Workers of Am*, 882 F.2d at 468-69; *Chrysler*, 959 F.2d at 688-89; *Way Bakery*, 363 F.3d at 593. The *Commc'n Workers of Am.* Court reasoned that courts are not free to "reject factual findings with which we disagree or the arbitrator's interpretation of the contract." *Commc'n Workers of Am*, 882 F.2d at 468 (citation omitted). Courts have no authority to disagree with an arbitrator's judgment even if they believe his judgment is wrong if he has acted within the scope of his authority and applying the contract. *Id*. "This is especially true when it comes to formulating remedies." *Enterprise Wheel*, 363 U.S. at 597 (quoted in *Westvaco Corp.*, 171 F.3d at 977.)

The District Court reached the same conclusion as the above-cited cases in its recent decision involving these parties. The Court noted that the arbitrator in that matter recognized the Company's significant interest in deterring employees from engaging in conduct violating its harassment policy and crafted what he believed to an appropriate remedy in light of the specific facts before him and the language of the parties' CBA, and therefore affirmed the arbitrator's award. [Exhibit C at 19.] So too here, the Arbitrator expressly recognized the Company's interest

in deterring employees from engaging in harassment and crafted what she believed to be an appropriate remedy in light of the specific facts before her and the language of the parties' CBA. Accordingly, the Court must find that the Award does not violate public policy and must affirm the Award.

> **D.**   **The Company's Use of the Judicial Process to Challenge the Award is Frivolous and Should Result in an Award of Attorney's Fees, Costs, and Interest.**

"[A]n award of attorney's fees … [and] interest on an arbitrator's award of back pay is within the equitable power and discretion of the Court." *Burke Dist. Corp. v. Pro Salesmen's Union*, No. 84-cv-03246, 1986 WL 10332, at *2 (D. Mass. Sept. 10, 1986). Forcing resort to the courts when it is unreasonable and wasteful has frequently resulted in judicial admonitions that parties engaging in unwarranted appeals of arbitration decisions do so at their peril. A party that is needlessly forced to confirm a labor arbitration award is thus entitled to attorney's fees. *Local 285, SEIU v. Nonotuck*, 64 F.3d 735 (1st Cir. 1995); *Crafts Precision*, 889 F.2d 1184, 1186 (1st Cir. 1989).

In the previous case between these parties, the District Court acknowledged that it had the power to award fees if it determines that the losing party's actions were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Exhibit C at 20-21, quoting *Local 285*, 64 F.3d at 737. Though the awarded Local 26 costs, it declined to award attorney's fees or interest, reasoning as follows:

> Wynn pursued its legitimate and well-founded interest in discouraging and punishing sexual harassment in its workplaces, and its arguments detailed above, while not meritorious, were definitely not frivolous.

Exhibit C at 21. However, in the wake of this decision, and in consideration of the voluminous caselaw that repeatedly confirmed an arbitrator's ability to reinstate an employee accused of a

single inappropriate comment, the Company's decision challenge this Award can no longer be said to be anything but frivolous. If the Company is permitted to continuously seek to overturn an award simply because it disagrees with it, then the promise of final and binding arbitration – informal, expeditious and relatively inexpensive – will be a nullity. A failure to grant interest and fees this time in this matter will only encourage the Company to continue to inflict damage on employees and the union in total disregard of the arbitrator's authority and the court's limited time and resources.

## IV.    CONCLUSION

For the reasons set forth herein, Local 26 respectfully requests that the Court grant judgment in its favor, confirm the Arbitration Award, and grant Local 26 interest, fees and costs incurred in defending the Company's frivolous Complaint, as well as interest on the make whole remedy.

Respectfully submitted,

UNITE HERE, Local 26,

By its Attorneys,

/s/ James Hykel
James Hykel, Esq. (BBO # 666861)
Jillian M. Bertrand, Esq. (BBO # 682214)
Pyle Rome Ehrenberg, PC
2 Liberty Square, 10th Floor
Boston, MA 02109
(617) 367-7200
jhykel@pylerome.com
jbertrand@pylerome.com

13

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 17, 2024.

/s/ Jillian M. Bertrand
Jillian M. Bertrand